Dennis D. KENNEDY, Plaintiff,

v.

VACATION INTERNATIONALE, LTD., Resort Property Internationale, Inc., Thompson Tile, John Does 1–10, Doe Governmental Agencies 1–10, Doe Business Entities 1–10, and Doe "Non–Profit" Corporations 1–10, Defendants.

Civ. No. 93–00211 DAE.

United States District Court,
D. Hawaii.

Jan. 24, 1994.

James J. Bickerton, William W. Ramos–Saunders, Bickerton Ramos–Saunders Dang & Bouslog, Honolulu, HI, for plaintiff.

Shelton G.W. Jim On, Henry F. Beerman, Jim On & Beerman, Honolulu, HI, for defendants.

Shannon L. Wack, Brenda Morris Hoernig, Honolulu, HI, for Thompson Tile.

### ORDER GRANTING DEFENDANTS VACATION INTERNATIONALE'S AND RESORT PROPERTY INTERNATIONALE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

DAVID ALAN EZRA, District Judge.

The court heard defendants' motion on January 18, 1994. William W. Saunders, Jr., Esq. appeared on behalf of plaintiff Dennis D. Kennedy; Shelton G.W. Jim On, Esq. appeared on behalf of defendants Vacation Internationale, Ltd. and Resort Property Internationale, Inc.; Leslie R. Kop, Esq. appeared on behalf of defendant Thompson Tile, which took no position in the instant motion. After reviewing the motion and the supporting and opposing memoranda, and hearing oral argument from counsel, the court grants defendants' motion for partial summary judgment.

### BACKGROUND

Plaintiff was injured on July 11, 1991 when he slipped and fell on the tile lanai of time-share unit # 4304 at the Sea Village Resort Condominium on the Big Island of Hawaii. At the time of the accident, plaintiff was the guest of time-share interest owner Jerry Wilson. The time-share unit was one of the condominiums purchased by defendant Vacation Internationale, which later transferred its ownership in the property to the Vacation Timeshare Program, which includes a real estate trust created by Vacation Internationale. As trustee, Vacation Internationale is empowered to manage and maintain the property for the benefit of time-share owners. Defendant Resort Property Internationale manages and maintains the condominium units in the time-share program on the

Big Island. Defendant Thompson Tile sold the lanai tile to Design Internationale (under its former name of Vacation Design Services), a division of defendant Vacation Internationale. The tile was installed by an independent contractor at the direction of Vacation Design Services. Plaintiff asserts that, at the time of the slip-and-fall incident, the lanai tile was wet and slippery, and that it was an "interior" grade of tile which was not suitable for outdoor use.

On January 14, 1993, plaintiff filed a complaint alleging that defendants expressly and/or impliedly represented or warranted that Unit 4304 of the Sea Village Condominium was reasonably safe and fit for its intended use as a vacation accommodation. In addition, plaintiff claims that defendants should be liable under the theory of strict product liability for having the patio tile installed in Unit 4304. The same allegations were maintained in plaintiff's First Amended Complaint.

Defendants Vacation Internationale and Resort Property Internationale have moved this court for an order dismissing plaintiff's claims for strict liability and breach of warranty of habitability on the basis that these claims fail to state a claim upon which relief can be granted. In the alternative, defendants move for an order granting partial summary judgment on the grounds that there are no genuine issues as to any material fact in dispute and that they are entitled to judgment as a matter of law with respect to said claims.

Because defendants' motion is based upon attached exhibits, including depositions, interrogatories, and affidavits, and this court has considered those materials, the motion will be treated as one for partial summary judgment. *See* F.R.C.P. 12(b).

## *STANDARD OF REVIEW*

■ Rule 56(c) provides that summary judgment shall be entered when:

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). The evidence and inferences therefrom must be viewed in the light most favorable to the party opposing summary judgment. *Diaz v. American Telephone & Telegraph,* 752 F.2d 1356, 1362 (9th Cir.1985). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. *Id.* 477 U.S. at 322, 106 S.Ct. at 2552.

■ Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed.R.Civ.P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987); Fed.R.Civ.P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) (citation omitted).

■ At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir. 1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law. *Id.* (citation omitted).

## *DISCUSSION*

I. Plaintiff's Strict Product Liability Claim

■ The doctrine of strict product liability, as contained in the Second Restatement of Torts, sets forth the following:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

 (a) the seller is engaged in the business of selling such a product, and

 (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

 (a) the seller has exercised all possible care in the preparation and sale of his product, and

 (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

*Restatement (Second) of Torts,* § 402A (1965). Plaintiff's strict product liability claim is based on his contention that defendant Vacation Internationale, through its department Vacation Design Services, acted as a supplier of the lanai tile. This court has previously recognized that strict liability may be imposed upon suppliers that "are an integral part of the overall producing and marketing enterprise." *Exxon Shipping Co. v. Pacific Resources, Inc.,* 789 F.Supp. 1521, 1526 (D.Haw.1991) (quoting *Pan–Alaska Fisheries v. Marine Construction and Design,* 565 F.2d 1129, 1135 (9th Cir.1977)).

Plaintiff asserts that Vacation Internationale placed the lanai tile into the stream of commerce by purchasing it and then "supplying" it to the unit owner for use on the apartment lanai. The facts of this case indicate, however, that Vacation Internationale had the responsibility of managing and maintaining the Sea Village Resort Condominium. Pursuant to this duty, Vacation Internationale purchased the lanai tile and hired an independent contractor to install it for the benefit of the unit owner, pursuant to Vacation Internationale's instructions and specifications. Vacation Internationale did not resell the lanai tile. Moreover, the court finds plaintiff's argument that the defendants were "suppliers" of the tile, for the purposes of imposing strict liability, to be unpersuasive. Merely having tile installed by an independent contractor does not amount to introducing the tile into the stream of commerce. The defendants simply did not play an integral role in the production or marketing of the lanai tile in question.

 In addition, even assuming that defendants did act as "suppliers" of the lanai tile, the doctrine of strict liability would still not apply because the tile did not constitute a "product" under Hawaii law. The Hawaii Supreme Court first approached the issue of defining "product" for the purposes of strict liability in the case of *Kaneko v. Hilo Coast Processing,* 65 Haw. 447, 452–58, 654 P.2d 343 (1982). There the court held that "a product should be determined on a case-by-case basis with that ·determination guided by the applicable case law, the public policy considerations underlying strict liability, the comments to the Restatement (Second) of Torts, and the Model Uniform Products Liability Act." *Id.* at 455, 654 P.2d 343. Subsequent Hawaii decisions have held that buildings and fixtures contained within them cannot be considered "products" within the meaning of § 402A of the Second Restatement of Torts.

In *Bidar v. Amfac, Inc.,* 66 Haw. 547, 554–55, 669 P.2d 154 (1983), the plaintiff sought to recover for injuries from a fall that occurred while she was a guest at the defendant's hotel. Plaintiff had attempted to use a bathroom towel rack for support, but the bar tore loose from the wall, causing her to fall. *Id.* at 549, 669 P.2d 154. Plaintiff claimed that the towel rack was a defective product for which the defendant was strictly liable. However, in affirming the dismissal of plaintiff's claim, the court held that, in the context of rented or leased properties, a towel rack should be considered to be a portion of the premises, and not a "product" under a strict liability tort theory. *Id.* at 556, 669 P.2d 154. Similarly, in *Armstrong v. Cione,* 69 Haw. 176, 183–86, 738 P.2d 79 (1987), the Hawaii Supreme Court held that the plate glass door to the shower in a one-bedroom apartment was not a "product" within the meaning of section 402A of the Restatement. The court found the shower door to be an "integral part of the structure of the apartment building." *Id.* at 186, 738 P.2d 79. *See also Messier v.*

*Association of Apartment Owners of Mt. Terrace,* 6 Haw.App. 525, 533–35, 735 P.2d 939 (1987) (finding that a metal panel attached to a roof was part of the building and, therefore, not a "product" within the meaning of section 402A of the Restatement).

Plaintiff argues that the Hawaii case law applying the doctrine of strict product liability to landlord-tenant scenarios is inapplicable to this case since Vacation Internationale and Resort Property Internationale were "suppliers" of the tile rather than landlords of the condominium unit. However, as discussed above, the court finds that these defendants were not suppliers for the purposes of product liability law, and that they did not introduce the lanai tile into the stream of commerce. Moreover, although cases such as *Bidar, Armstrong,* and *Messier* did not specifically involve condominium time-share arrangements such as the one in the instant action, the court nevertheless finds their reasoning instructive to its consideration of the defendants' motion. Here, the plaintiff slipped and fell on lanai tile which, even more than a towel rack or plate glass shower door, was a permanently attached, integral part of the dwelling unit. Under relevant Hawaii law, neither the Sea Village condominium unit nor any portion thereof can be considered a product within the meaning of strict product liability law. There being no genuine issue of material fact on the issue of defendants' being subject to strict product liability, the court grants defendant's motion for partial summary judgment.

## II. Plaintiff's Claim for Breach of Implied Warranty

Plaintiff claims that the condominium unit carried defendants' implied warranty that all elements, fixtures, and furniture therein, including the lanai tile, was fit for the apartment's intended use as a vacation accommodation. Plaintiff argues that, by specifically "supplying and designating the tile for use on the outdoor lanai, Vacation Design Services and Vacation Internationale impliedly warranted that said tile was 'merchantable' and fit for its stated ordinary use 'under the contract description.'" Plaintiff's opposition memorandum, at 12. Plaintiff cites Article 2

of the Uniform Commercial Code, which provides that "unless excluded or modified ... a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Haw.Rev.Stat. § 490:2–314(1) (1991). Plaintiff also cites section 490:2–318, which provides that "[a] seller's warranty whether expressed or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by a breach of the warranty." Haw.Rev.Stat. § 490:2–318 (1991).

 With regard to plaintiff's merchantability theory, the court finds that Article 2 of the Uniform Commercial Code does not apply to the facts of this case. First, there was no sale of goods involved in this matter. "Goods" in the Hawaii Uniform Commercial Code are defined as items which are movable at the time of identification for the contract of sale:

(1) "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid.... "Goods" also includes ... other identified things attached to realty as described in the section on goods to be severed from realty (section 490:2–107).

Haw.Rev.Stat. § 490:2–105(1) (1991). Section 490:2–107 describes "other things attached to realty" as things which are capable of severance "without material harm" to the realty. Thus the Hawaii U.C.C. includes within its scope only items which are movable or severable from real property without material harm. This court cannot fathom how permanently affixed lanai tile could possibly be regarded as a "good" within the meaning of the Hawaii U.C.C. Furthermore, there is no evidence of a relevant "sale" of lanai tile to the time-share owner in this case. The Hawaii U.C.C. states as follows:

(1) In this Article unless the context otherwise requires "contract" and "agreement" are limited to those relating to the present or future sale of goods. "Contract for sale" includes both a present sale of goods and a contract to sell goods at a future time. A "sale" consists in the passing of

title from the seller to the buyer for a price....

Haw.Rev.Stat. § 490:2–106(1) (1991). Here, the time-share owner purchased only the right to occupy the resort property at specified times and under specified conditions. There was no passage of title of the lanai tile in this case, other than that involved in the transaction between Thompson Tile and Vacation Design Services. In addition, the implied warranty of merchantability applies only "if the seller is a merchant with respect to goods of that kind." Haw.Rev.Stat. § 490:2–314(1) (1991). There is absolutely no evidence that defendants Vacation Internationale or Resort Property Internationale are in the business of selling lanai tile.

■ In addition to his merchantability theory, plaintiff also contends that Vacations Internationale and Resort Property Internationale impliedly warranted that the condominium unit was suitable and fit for its intended use. In so arguing, plaintiff alludes to a single Michigan decision, *Jones v. Keetch*, 388 Mich. 164, 200 N.W.2d 227 (1972). In that case, the court recognized the applicability of an implied warranty of fitness theory to a situation in which a motel guest was injured when a chair in her motel room collapsed. Plaintiff fails to mention, however, that this decision has been limited to applying only to personal chattels. *See Clancy v. Oak Park Village Athletic Center*, 140 Mich.App. 304, 364 N.W.2d 312 (1985). In *Clancy*, the court held that the implied warranty of fitness doctrine recognized in *Jones* was not applicable to realty improvements. Defendants contend, and this court agrees, that the application of the *Jones* rationale to the instant case would be contrary to established Hawaii law regarding premises liability. In addition to the holding of *Jones* never having been accepted by Hawaii courts, a number of other jurisdictions, in cases also involving injuries in the innkeeper-guest context, have rejected it outright. *See, e.g. Ely v. Blevins*, 706 F.2d 479 (4th Cir. 1983); *Wagner v. Coronet Hotel*, 10 Ariz. App. 296, 458 P.2d 390 (1969); and *Moore v. James*, 5 Utah 2d 91, 297 P.2d 221 (1956). Plaintiff cites no authority for the proposition that an implied warranty of fitness for intended use should be imposed upon entities

which are charged with the management and maintenance of time-share condominium units. Thus the court grants the moving defendants' motion for summary judgment on plaintiff's implied warranty claim.

## CONCLUSION

For the reasons stated above, the court GRANTS Vacation Internationale's and Resort Property Internationale's motion for partial summary judgment on plaintiff's claims for strict product liability and implied warranty of fitness for intended use.

IT IS SO ORDERED.